## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

L.D., et al.　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　　　*　　　　Civil No. CCB-18-1637
　　　　　　　　　　　　　　　　　*
Anne Arundel County Public Schools, et al.　*

### MEMORANDUM

Now pending before the court are the parties' motions for summary judgment and the

plaintiffs' motion to supplement the record. For the reasons stated below, the court will deny

both motions for summary judgment, deny the plaintiffs' motion to supplement as moot, and

remand the case to the administrative law judge for further proceedings.

### FACTS AND PROCEDURAL HISTORY

The parties ask this court to decide whether the plaintiffs are entitled to a publicly funded

independent educational evaluation ("IEE") under the Individuals with Disabilities Education

Act ("IDEA"). L.D. attends Anne Arundel County Public Schools ("AACPS"). According to

the findings of fact by the administrative law judge ("ALJ"), which the parties do not dispute,[1]

the basic facts are as follows: L.D. receives special education services pursuant to an

individualized education program ("IEP"); her diagnoses include autism spectrum disorder,

chromosomal anomalies, attention deficit hyperactivity disorder, and some speech and language

disorders. Administrative Hearing Decision (February 6, 2018) at 4–5, ECF 22. L.D. was in

seventh grade during the 2016-2017 school year. *Id.* at 5. In December 2016, in preparation for

---

[1] *See* Memo. in Supp. of Defs.' Cross Motion and Opp'n at 3, ECF 27-1 ("The Plaintiffs do not challenge" the ALJ's findings of fact.); Pls.' Memo. in Opp'n at 1, ECF 32 ("Although the *stated* Findings of Fact are not in dispute, it is what is absent from them that forms the crux of this case.").

a reevaluation of L.D. as part of a triennial review,[2] the IEP team reviewed materials related to L.D.'s progress and determined, with the participation and consent of L.D.'s mother, "the need for further assessment in the following areas: written expression, pragmatic language, fine/visual, sensorimotor, and social/emotional development." *Id.* From December 2016 to February 2017, the school conducted evaluations of written expression, social and emotional development, and pragmatic language. *Id.* at 5–8. On March 15, 2017, the IEP team, including the parents, "agreed to conduct additional assessments in the areas of basic reading skills, reading comprehension, math calculation, math reasoning, and sensorimotor." *Id.* at 8. In March 2017, the school conducted an evaluation of L.D.'s performance in reading and math. *Id.* at 8–9.

On May 5, 2017, the IEP team, including L.D.'s parents, conducted a comprehensive evaluation review, including by reviewing L.D.'s performance in assignments and standardized tests; her psychological, academic, communication, and occupational therapy assessments; a diagnosis of dysgraphia and recommendation from Anthony B. Wolff, Ph.D.; and her academic achievement. *Id.* at 9. L.D.'s parents disagreed with the IEP team's conclusion that L.D. did not have a specific learning disability. *Id.* at 10. The parents later requested IEEs in the areas of psychology, academics, and speech language, and requested that the school pay for the evaluations. *Id.* at 11. The school requested a due process hearing to show the evaluations it conducted were appropriate and that the parents were not entitled to publicly funded IEEs. *Id.*

The ALJ limited the hearing to "whether the AACPS evaluations in the areas of reading, writing, math, pragmatic language, and social emotional development were appropriate" and if not "whether the Parents have a right to independent educational evaluations at public expense." *Id.* at 11. This limitation was contested by the parents, who argued that they should have "the

---

[2] The ALJ's decision states "triannual review." It appears this should be "triennial review" as the IEP team was preparing for the "required 3-year reevaluation," not an evaluation conducted three times per year. Referral from the IEP Team, Administrative Hearing Ex. 2, ECF-22.

opportunity to address the issue of suspected [learning] disability that AACPS failed to assess." Motion to Recuse at 3 (November 22, 2017), Administrative File, ECF 22.[3]

At the hearing, the parents presented expert testimony that the evaluations were inadequate. Ms. Roundtree, an expert in special education and reading, testified that the AACPS assessments did not provide enough information regarding pseudoword decoding. Administrative Hearing Decision at 15–16. Dr. Culotta, an expert in psychological assessment and students with learning disabilities, testified that the AACPS assessments did not consider L.D.'s extensive history, the data required further analysis, and the assessment was unduly narrow. *Id.* at 16. Ms. Robinette, an expert in speech language therapy and assessment, stated that the assessment of L.D.'s pragmatics was not appropriate because L.D.'s "pragmatic profile is so complex" and the assessment did not include articulation. *Id.* at 17. The ALJ excluded certain testimony regarding the alleged failure to test L.D. for areas relevant to her suspected learning disability and the type of information considered by the IEP team as outside the scope of the case.[4]

The ALJ found that the evaluations in the areas of reading, math, written expression, pragmatic language, and social emotional development were appropriate. She noted that "[t]he only criticism offered by the Parents' experts was that the assessments should have been broader and should have included more information regarding the Student's history," *id.* at 20, but "what

---

[3] The decision on the scope of the hearing seems to have been made at the November 15, 2017, prehearing conference, for which there does not appear to be a record in the administrative file. The parents filed a motion to recuse the ALJ on November 22, 2017, in which they addressed the decisions made at the prehearing conference. *See* Motion to Recuse, Administrative File. There is no contention that the parents failed to appropriately object at the prehearing conference or that they waived their challenge as to the scope of the hearing. *See E.P. by and through J.P. v. Howard Cnty. Pub. Sch. Sys.,* No. ELH-15-3725, 2017 WL 3608180, at *32 (D. Md. Aug. 21, 2017) (plaintiffs waived other claims in proceeding when they did not object to the framing of the issues by the ALJ).
[4] For example, at the hearing, the parents' counsel attempted to ask a witness about a document discussed during an IEP meeting. AACPS's counsel objected, and the objection was sustained by the ALJ. The ALJ stated that "this hearing is limited to were their evaluations deficient . . . [i]t is not what they failed to do or should have considered." Hearing Transcript, Vol. 2, p. 41, ECF 22.

each expert ignored was that [the AACPS] assessments were purposely limited in scope by the IEP team and its need for additional information," *id.* at 17. L.D., by and through her parents and next friends, M.D. and S.D. (the "parents") then filed this complaint against defendants AACPS, George Arlotto, and Bobbi Pedrick (collectively, "AACPS").[5]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd,* 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.,* 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson,* 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris,* 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts,* 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993)).

---

[5] The complaint also includes claims of retaliation (Count II) and violations under 42 U.S.C. § 1983 (Count III). Counts II and III were dismissed on October 12, 2018. ECF 16.

"In light of the IDEA's manifest preference for local control of schools, we apply a 'modified de novo review' to a state ALJ's decision in an IDEA case, 'giving due weight to underlying administrative proceedings.' We determine independently whether the school district violated the IDEA but consider the ALJ's factual findings to be 'prima facie correct.' Performed correctly, this sort of review ensures that courts do not 'substitute their own notions of sound educational policy for those of the school authorities which they review.'" *T.B., Jr. by and through T.B., Sr. v. Prince George's Cnty. Bd. of Educ.*, 897 F.3d 566, 572 (4th Cir. 2018) (citations omitted).

## DISCUSSION

Statutory Framework: The IDEA seeks "to ensure that all children with disabilities have available to them a free appropriate public education [referred to as "FAPE"]. . . designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To that end, the statute requires state or local agencies receiving certain federal funds to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a).

Schools have the obligation, known as Child Find, to identify children with disabilities who are in need of special education and related services. *T.B.*, 897 F.3d at 571–72 (citing 20 U.S.C. § 1412(a)(3)(A)). Each eligible child should receive an "individualized education program" ("IEP") which includes "a statement of the child's present levels of academic achievement and functional performance," "a statement of measurable annual goals," and "a statement of the special education and related services and supplementary aids and services . . . to be provided to the child." *Id.* at 571 (quoting 20 U.S.C. § 1414(d)(1)(A)(i)). The IEP must be

"reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* (citation omitted).

In addition to the initial evaluation to determine if a child has a disability, 20 U.S.C. § 1414(a)(1)(B), schools must also "conduct periodic re-evaluations if the school determines that one is warranted, or if a teacher requests one, or if the child's parent or guardian requests one," as well as "at least once every three years . . . unless the parents and school agree that such a reevaluation is not necessary." *D.S. by and through M.S. v. Trumbull Bd. of Educ.*, 357 F. Supp. 3d 166, 171 (D. Conn. 2019) (citing 20 U.S.C. § 1414(a)(2)(A)(i)–(ii); *id.*(a)(2)(B)). "A triennial evaluation requires the school district to review existing information about the child as well as to conduct a new round of additional testing to determine the child's abilities and needs." *Id.* The implementing regulations define "evaluation" as "procedures used in accordance with [34 C.F.R.] §§ 300.304 through 300.311 to determine whether a child has a disability and the nature and extent of the special education and related services that the child needs." 34 C.F.R. § 300.15. As explained in a recent case in this district,

> Sections 300.304 and 300.305 set forth the required procedures for conducting such an evaluation. Evaluators must (1) use "a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child, including information provided by the parent"; (2) use multiple measures and assessments; (3) use "technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors"; (4) "[r]eview existing evaluation data on the child," including information from parents, classroom or state assessments of the child, and teacher observations; and (5) identify whether and what additional data needs to be obtained and reviewed. *See* 34 C.F.R. §§ 300.304-05; *see also* 20 U.S.C. § 1414(b). Sections 300.306 through 300.311 set forth procedures for specific forms of evaluations, such as determining eligibility under the IDEA or evaluating specific learning disabilities.

*F.C. v. Montgomery Cnty Pub. Sch.*, No. TDC-14-2562, 2016 WL 3570604, at *3 (D. Md. June 27, 2016).[6]

---

[6] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

If the parents disagree with a school's evaluation, they may request an IEE at public expense. 34 C.F.R. § 300.502(b)(2). The school board may then either pay for the IEE or file "a due process complaint to request a hearing to show that its evaluation is appropriate," 34 C.F.R. § 300.502(b)(2), as AACPS did here. Parents may also file a due process complaint of their own, "relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child," under a separate regulation, 34 C.F.R. § 300.507.

Scope of Administrative Hearing: By focusing only on whether "the AACPS evaluations in the areas of reading, writing, math, pragmatic language, and social emotional development were appropriate" the ALJ employed an unduly narrow view of what evaluation the parents challenged. The parents' IEE request stated that they disagreed "with the evaluation conducted between 12/22/2016 and 4/07/2017." *See* IEE Request (September 30, 2017) Ex. P-40, ECF 22. Therefore, the request states a disagreement with the triennial evaluation process as a whole. This is at odds with the ALJ's decision that the hearing would only focus on the reading, writing, math, pragmatic language, and social emotional development assessments.

AACPS cites to *F.C.* to support the limited scope of the administrative hearing, as *F.C.* found that in order to have a right to an IEE at public expense, the parents must disagree with an evaluation actually conducted. 2016 WL 3570604, at *3. *F.C.* held that a May 2012 meeting "consist[ing] of reviewing 2009 assessment data, report card data, and teacher observations" was not an evaluation for the purposes of § 300.502(b), as, although it met several of the requirements of an evaluation, it did not involve "a variety of assessment tools and strategies" nor the use of "technically sound instruments." *Id.*[7] Therefore, there was no reevaluation with which the parents disagreed, which is a prerequisite under § 300.502(b) for obtaining a publicly

---

[7] Additionally, in *F.C.*, the parents refused to consent to the school's reevaluation. *Id.* at *5.

funded IEE. The triennial evaluation of L.D., however, meets all five requirements of an evaluation, listed above. The evaluation used a variety of assessment tools, multiple measures, and technically sound instruments (through the conducting of additional assessments on L.D.), and involved the review of existing evaluation data and an identification of what additional data was needed. Even in *D.S.*, which AACPS relies on, the court explained that "[t]here is little doubt that a triennial evaluation of the type that was conducted for D.S. in October 2014 would qualify as an 'evaluation' under the IDEA" and that the testing proposed by the parents (*e.g.* occupational therapy and speech & language assessments) "would be well within the scope of a proper triennial evaluation in light of the very comprehensive nature of such an evaluation." 357 F. Supp. 3d at 173, 178.

It is therefore necessary to remand this case to the ALJ for additional factual findings. The court notes that the ALJ did allow some evidence regarding the failure to assess L.D. for a learning disability.[8] The ALJ, however, limited the scope of the hearing and excluded evidence that appears relevant to the question of whether the triennial evaluation, as a whole, was appropriate. Further, because the ALJ limited the scope of the hearing, she did not consider whether the additional information requested by the IEP team was sufficient to properly make a learning disability diagnosis,[9] nor did she make a factual finding as to whether the triennial evaluation, as a whole, was appropriate. Therefore, the court will remand the case so that the

[8] For example, Dr. Vincent Culotta testified at the administrative hearing that "[t]he evaluations were not sufficient or adequate to address the presence of a specific learning disability." Testimony of Dr. Culotta, Hearing Transcript, Vol. 2, p. 153. The ALJ then asked "why not" to which Dr. Culotta was allowed to explain why. *Id.* Additionally, the ALJ appears to have made factual findings regarding whether the limited assessments were appropriate in light of the information that the IEP team had. Administrative Hearing Decision at 18.

[9] To the extent the parents argue differently, the court reiterates that the IEP team's ultimate eligibility determination that L.D. did not have a specific learning disability is not relevant as to whether the triennial evaluation was appropriate. *E.P. by and through J.P. and A.P. v. Howard Cnty. Pub. Sch. Sys.*, No. ELH-15-3725, 2017 WL 3608180, at *2 (D. Md. Aug. 16, 2017). Instead, "the question of whether the Evaluation was appropriate turns on whether the proper methodologies were utilized, rather than the results or conclusions of the . . . assessments." *Id.* at *18. The court, however, sees no reason why the type of information considered by the IEP team in its triennial evaluation is not a factor relevant to whether the methods of the evaluation were appropriate.

ALJ, as fact-finder, can determine whether AACPS can show that the triennial evaluation of L.D. was appropriate. L.D.'s parents are not at this time, however, entitled to reimbursement for the privately obtained evaluations.

Motion to Supplement the Record: Because the court remands the case to the ALJ, the court will deny the motion to supplement the record as moot.

## CONCLUSION

For the reasons stated above, the court will deny both parties' motions for summary judgment, and deny the parents' motion to supplement the record as moot. The court will remand this case to the administrative law judge for further proceedings. A separate order follows.

11/18/19
_____
Date

_____
Catherine C. Blake
United States District Judge

9